IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EYRAM FOLIVI KUEVIAKOE,<br><br>                 Petitioner,<br><br>     vs.<br><br>KRISTI NOEM, Secretary of Homeland Security; UR M. JADDOU, Director of United States Citizenship and Immigration Services; JEFFREY BEIL, Omaha Field Office Director for United States Citizenship and Immigration Services; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>                 Defendants. | NO. 8:25-CV-239<br><br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS** |

This case comes before the Court on Petitioner Eyram Folivi Kueviakoe's Petition for Review of Denial of Application for Naturalization pursuant to 8 U.S.C. § 1421(c) and Request for De Novo Hearing. Filing 1. Defendants, who are various U.S. immigration officials, move to dismiss Kueviakoe's Petition for failure to state a claim upon which relief can be granted. For the reasons stated herein, the Court concludes the Petition must be dismissed.

## I.   INTRODUCTION

### A.   Factual Background

Petitioner Eyram Folivi Kueviakoe is a citizen of Togo. Filing 1 at 1 (¶ 2). Kueviakoe entered his submission for the Diversity Immigrant Visa Program (DV-1) for fiscal year 2016 in or about October 2014. Filing 1 at 3 (¶ 10). On September 7, 2015, Kueviakoe signed and submitted the Form

DS-260 Immigrant Visa Electronic Application (DS-260) to obtain a consular interview in Lome, Togo. Filing 1 at 3 (¶ 11). On that form, Kueviakoe represented that he did not have any children. Filing 1 at 3 (¶ 11). On June 9, 2016, "Kueviakoe attended an interview at the United States Embassy in Lome, Togo, for the adjudication of his application to obtain DV-1 status." Filing 1 at 3 (¶ 13). "A Consular Officer interviewed him and approved his application for DV-1 status after noting that [Kueviakoe] was a '*31 yo single DV app*' and that the officer had '*No fraud concerns*.'" Filing 1 at 3 (¶ 13) (emphasis in original).

On February 18, 2014, prior to Kueviakoe's DS-260 submission on September 7, 2015, and consular interview on June 9, 2016, Anais Mawusse Kueviakoe was born. Filing 1 at 3 (¶¶ 9, 11, 13). Anais Mawusse Kueviakoe is Petitioner's daughter. Filing 1 at 3 (¶ 9). On December 22, 2015, after Kueviakoe's DS-260 submission but before his consular interview, Kueviakoe married Ms. Ahlinba Mawusse Madjri, Anais Mawusee Kueviakoe's mother. Filing 1 at 3 (¶¶ 9, 11–13).

Kueviakoe obtained permanent resident status through DV-1 immigrant classification on October 22, 2016. Filing 1 at 3 (¶ 14). On September 10, 2021, Kueviakoe filed Form N-400 Application for Naturalization (N-400) with United States Citizenship and Immigration Services (USCIS). Filing 1 at 3 (¶ 15).

Defendant Jeffrey Beil, Field Office Director for the Omaha Field Office of USCIS, denied Kueviakoe's application for naturalization. Filing 1 at 2, 4 (¶¶ 5, 16). USCIS stated in its denial:

> During the interview and review of your application with an Immigration Services Officer, you testified that the information on your Form N-400, along with any amendments made during the naturalization interview, and the documents submitted by you were true and correct. The record indicates
>
> That during your N-400 interview the Officer discovered that you committed misrepresentation by failing to report your child on your DS-260 for your DV-1 Visa. You claimed to be single with no children on your DS-260 signed on September 7, 2015. However your first child (Anais Kueviakoe) was already born in France on February 18, 2014. You did not declare your child until September 9, 2021. USCIS has found fraud and misrepresentation to obtain a benefit.

Your failure to disclose all the required information, specifically your child on the Form DS-260, and also failed [sic] to disclose the information at the time of your Diversity Visa Consular interview , [sic] made you ineligible to receive an immigrant visa. You are therefore not in possession of a valid immigration documents [sic] and you were inadmissible at entry pursuant to INA 237(a)(1)(A) and INA 212(A)(7)(A)(i).

To qualify for naturalization under INA 316, you must demonstrate that you meet all requirements for naturalization including the requirement of having been lawfully admitted to the United States for permanent residence. You have not demonstrated that you have been lawfully admitted for permanent residence and, therefore, are ineligible for naturalization. See INA 318 [sic]

You have not established that you are eligible for naturalization under section 316 of the Immigration and Nationality Act (INA). Therefore, for the reason(s) stated, we must deny your Form N-400 application. If you believe that you can overcome the grounds for this denial, you may submit a request for a hearing on Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, within 30 calendar days of service of this decision (33 days if this decision was mailed). See Title 8, Code of Federal Regulations (8 CFR), sections 336.2 (a) and 103.8(b). Without a properly filed Form N-336, this decision will become final. See section 336 of the Immigration and Nationality Act (INA).

Filing 1 at 4 (¶ 16).

Kueviakoe filed a Form N-336 Request for a Hearing on a Decision in Naturalization Proceedings (N-336) with USCIS on August 22, 2024, "argu[ing] that the misrepresentation was not a 'material' one as the failure to disclose his daughter would not have directly disqualified him from being eligible for the DV-1 Visa." Filing 1 at 4–5 (¶ 17). On December 9, 2024, USCIS, through Beil, reaffirmed its denial, stating:

The existence of your child and spouse would have been material because knowledge of them could have influenced the Consular Officer's decision on your diversity visa relating to the public charge assessment and whether you were admissible under INA 212(a)(4)(A). In determining whether an applicant is likely to become a public charge, a consular officer is required to consider, "at a minimum," the applicant's "family status" (including the number of dependents for whom they have financial responsibility) and "financial status," among other factors. See INA 212(a)(4)(B)(i); see also 9 FAM 40.41 N4 (2013). Thus, the existence of children directly impacts an applicant's "family status" and "financial status" as relevant to the public charge assessment. In addition, if disclosed, your eligible dependents would have counted toward the 55,000-person annual cap on diversity immigration.

Filing 1 at 5 (¶ 18). This decision stated it "constitute[d] a final administrative denial of [Kueviakoe's] naturalization application." Filing 1 at 5 (¶ 19).

### B. Procedural Background

Kueviakoe filed the Complaint on April 1, 2025, alleging "USCIS erroneously abused its discretion in denying [Kueviakoe's] naturalization application when finding that he had made a material misrepresentation in applying for the Diversity Visa, which later became the basis for his adjustment to permanent resident status." Filing 1 at 7–8 (¶ 31). On June 13, 2025, Defendants filed the Motion to Dismiss now before the Court. Filing 15.

## II. ANALYSIS

### A. Rule 12(b)(6) Standards

In order to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[T]hreadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680–83). To put it another way, a court "must determine whether [a plaintiff's] complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at

678). In contrast, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th at 589 (8th Cir. 2022). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021). A court is not required to wait to see if more specific information becomes available through the discovery process to decide if a pleading can state a claim. *Steinbuch v. Cutler*, 518 F.3d 580, 591 (8th Cir. 2008) (finding no abuse of discretion in refusing to allow discovery where a pleading lacked sufficient factual allegations to state a claim).

### B.  Applicable Law

#### 1.  *The Statutory and Regulatory Context*

The United States can issue 50,000 diversity visas each fiscal year. *See* 8 U.S.C. § 1151(e) ("The worldwide level of diversity immigrants is equal to 55,000 for each fiscal year."); The Nicaraguan Adjustment and Central American Relief Act, Pub. L. 105-100, 111 Stat. 2160 (1997) ("Beginning in fiscal year 1999, subject to paragraph (2), the number of visas available for a fiscal year under [§] 201(e) of the Immigration and Nationality Act shall be reduced by 5,000 from the number of visas available under that section for such fiscal year."). Diversity visas are specifically

issued to applicants from certain low-admission areas. 8 U.S.C. § 1153(c)(1)(E). Aliens desiring a diversity visa are permitted to "file a petition," and those that qualify, "through random selection," are eligible to receive the visa through the end of the specific fiscal year for which they were selected. 8 U.S.C. § 1154(a)(1)(I)(i).

Applicants must meet certain general requirements to be eligible for a diversity visa, including a high school education, its equivalent, or certain work experience. 8 U.S.C. § 1153(c)(2). Less substantively, petitions must be submitted "in such form as the Secretary of State may by regulation prescribe and shall contain such information and be supported by such documentary evidence as the Secretary of State may require." 8 U.S.C. § 1154(a)(1)(I)(iii). One such documentary requirement is that the applicant must provide:

> The name[s], date[s] and place[s] of birth and gender of the petitioner's spouse and child[ren], if any, (including legally adopted and step-children), regardless of whether or not they are living with the petitioner or intend to accompany or follow to join the petitioner should the petitioner immigrate to the United States pursuant to INA 203(c), but excluding a spouse or a child[ren] who is already a U.S. citizen or U.S. lawful permanent resident.

22 C.F.R. § 42.33(b)(1)(v). Applicants must also submit "a photograph of the petitioner and of his or her spouse and all unmarried children under the age of 21 years." 22 C.F.R. § 42.33(b)(2). Failure to comply requires immigration officials to deny applications under internal State Department regulations. Vol. 9 *Foreign Affairs Manual* § 502.6-4(b)(1)(c) ("Entries lacking the required information or photos should be rejected by the registration website or disqualified during processing by KCC or at post."); 9 FAM 502.6-4(b)(2)(c)(iii) ("Deny the visa application of an applicant who failed to list on their DV program entry a spouse or child who was required to be listed."); 9 FAM 502.6-4(f)(2)(b)(iii) ("Therefore, failure to provide information or documentary evidence specified in 22 CFR 42.33 will render an applicant ineligible for a visa under [§] (iii)."). Randomly selected qualifying and approved petitions enable a status change to permanent lawful

resident. 22 C.F.R. 42.33(c); 8 U.S.C. § 1153(e)(2) ("Immigrant visa numbers made available under subsection (c) (relating to diversity immigrants) shall be issued to eligible qualified immigrants strictly in a random order established by the Secretary of State for the fiscal year involved."). This procedure is what enabled Petitioner to change his status to lawful permanent resident on or about October 22, 2016. Filing 1 at 3 (¶ 14).

      *2. Standards for Naturalization*

Aliens can only be naturalized as citizens of the United States pursuant to 8 U.S.C. § 1421. "[S]trict compliance" with all statutory requirements is required. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). "[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967); *see also United States v. Ginsberg*, 243 U.S. 472, 475 (1917) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with.").

If a naturalization applicant's N-400 is denied, the applicant can seek de novo review of his or her application's denial in a United States district court after an immigration officer conducts an 8 U.S.C. § 1447(a) hearing. 8 U.S.C. § 1421(c).

**C. Petitioner Does Not State a Plausible Claim to Relief**

      *1. The Parties' Arguments*

Defendants argue that Kueviakoe must show he is eligible for naturalization in order for relief to be granted. Filing 16 at 6. According to Defendants, "[Petitioner's] Complaint should be dismissed because he does not reasonably allege that he is eligible for naturalization on at least two grounds: good moral character and that he was lawfully admitted for permanent residence." Filing 16 at 7.

Kueviakoe must show he has been and continues to be a person of good moral character for the five years before the N-400 was filed and until he is naturalized, according to Defendants. Filing

16 at 7. Defendants state that "[§] 1101(f) provides certain categories of individuals who shall not be found to be of good moral character," one such category being "any applicant 'who has given false testimony for the purpose of obtaining any benefits under this chapter [such as naturalization].'" Filing 16 at 7 (citing 8 U.S.C. § 1101(f)). Defendants also note that "[§] 1101(f) is not definitionally limited," meaning a person can be found lacking good moral character even if he or she does not fit within any one of § 1101's enumerated disqualifiers. Filing 16 at 7.

Defendants maintain Kueviakoe is without good moral character and therefore ineligible for naturalization because he gave false testimony on his DS-260 and in his interview and "continued to conceal" his familial status until he applied for naturalization. Filing 16 at 8, 10. According to Defendants, Kueviakoe only disclosed the child he previously omitted when he filed his N-400 "approximately" five years after he swore his DS-260 application contained true and accurate statements. Filing 16 at 9. Defendants also assert that Kueviakoe neither "update[d] his application [after he got married] nor discuss[ed] his marriage with the Consular Officer." Filing 16 at 10. "[D]espite the many opportunities over the course of seven years to accurately report his family status, [Kueviakoe] failed to do so and continued to conceal [his daughter's and wife's] existence," according to Defendants. Filing 16 at 10. Defendants conclude that "[Kueviakoe's] actions are not representative of a person with good moral character." Filing 16 at 10. Because the Court resolves this case on the ground that Kueviakoe is not lawfully admitted for permanent residence, the Court does not reach this argument.

Defendants argue that Kueviakoe must also show he is lawfully admitted for permanent residence since such status is a prerequisite for naturalization. Filing 16 at 10–11. If an applicant was "not legally entitled to permanent resident status when he received it," that applicant is not "lawfully admitted" according to Defendants. Filing 16 at 10–11. Defendants maintain that

inadmissible persons ineligible for naturalization include "those 'who, by fraud or willfully misrepresenting a material fact, seek[] to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other [immigration] benefit." Filing 16 at 11 (citing 8 U.S.C. § 1182(a)(6)(C)(i)). Defendants rely on *Kungys v. United States*, 485 U.S. 759, 767 (1988), and subsequent Eighth Circuit caselaw relating to civil denaturalization to maintain that the statute at issue here, 8 U.S.C. § 1182(a)(6)(C)(i), which relates to admissibility, has four elements. Filing 16 at 11. According to Defendants, the government must show: "(1) the applicant [] 'misrepresent[ed]' a fact; (2) the misrepresentation [was] 'willful;' (3) the fact [was] 'material;' and (4) the purpose of the misrepresentation [was] to 'procure' an immigration benefit." Filing 16 at 11 (citing *Kungys*, 485 U.S. at 767; *United States v. Hirani*, 824 F.3d 741, 747 (8th Cir. 2016). Defendants maintain each element is met in this case. Filing 16 at 15.

Defendants state that Kueviakoe misrepresented his parental status when he "answered 'no' in response to the question asking whether he had any children" on the DS-260. Filing 16 at 11. Defendants similarly maintain the misrepresentation was willful, given Kueviakoe knew of his daughter's birth at the time he applied for DV-1 status. Filing 16 at 12–13.

"Materiality 'is a legal question'" according to the Defendants, and a misrepresentation is material "if it has a natural tendency to influence the decisionmaker, or if it cuts off a line of inquiry that could have been made by the decisionmaker." Filing 16 at 13 (citing *United States v. Daifullah*, 11 F.4th 888, 897 (8th Cir. 2021)). Defendants argue that Kueviakoe's misrepresentations were material "[a]s a matter of law" for three reasons. Filing 16 at 13. First, the omissions were material because "failure to include a spouse or children would be grounds for denial of the application." Filing 16 at 13. Second, the annual cap on diversity visas "suggests that children are material to the grant or denial of a visa application." Filing 16 at 14 (citing *Machoka v. Bierman*, No. 3:21-CV-

2967-G, 2022 WL 17834900, at *7 (N.D. Tex. Dec. 21, 2022)). Third, "[Petitioner's] omissions deprived the Consular Officer of a fair chance to evaluate whether [Petitioner] was likely to become a public charge," and "[a]ny applicant found 'likely at any time to become a public charge is inadmissible' for a visa." Filing 16 at 14 (citing 8 U.S.C. 1182(a)(4)(A)).

Lastly, Defendants maintain the "procurement" prong is also satisfied because "[i]nforming DOS and USCIS of [Kueviakoe's] daughter, and later his wife, would require [Kueviakoe's] DS-260 application to undergo further scrutiny resulting in a potential denial." Filing 16 at 15. "Withholding this information . . . eased the process for [Kueviakoe]." Filing 16 at 15. The purpose of the misrepresentation was "obviously" to "procure" an immigration benefit. Filing 16 at 15.

In response, Kueviakoe challenges Defendants' application of the Rule 12(b)(6) standards. Filing 19 at 3–4. Specifically, Kueviakoe maintains that "[w]hether [his] misrepresentation to immigration officials was a 'material' one is the issue at the heart of this case that must be determined by the Court after adequately progressing through the standard discovery and potentially trial processes." Filing 19 at 4. According to Kueviakoe, "Defendants' motion improperly seeks to impose a heightened pleading standard . . . ." Filing 19 at 4. Kueviakoe maintains that the Complaint "provid[ed] sufficient factual allegations to state a plausible claim for relief by arguing that his misrepresentation was not material and requesting that this Court grant his application for naturalization." Filing 19 at 4.

The Court notes that Defendants make a new argument in their reply brief. Filing 20 at 7. That is, Defendants argue for the first time that a finding of materiality is not necessary to find Kueviakoe inadmissible and ineligible for naturalization. Filing 20 at 7. Though the Court understands this argument as complying with NECivR 7.1(c)(2) in that it addresses and relates to Kueviakoe's argument that the Court "must" determine whether the misrepresentation was

10

"material" "after adequately progressing through the standard discovery and potentially trial processes," the Court does not reach this argument since the case is resolved on other grounds. Filing 19 at 4; Filing 20 at 7–8.

2. *Petitioner Is Not Lawfully Admitted for Permanent Residence and Therefore Fails to State a Plausible Claim*

Kueviakoe must show he is lawfully admitted for permanent residence in order to be eligible for naturalization. 8 U.S.C. § 1429 ("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."); *see also* 8 C.F.R. § 316.2(a)(2) (requiring an alien to establish he "[h]as been lawfully admitted as a permanent resident of the United States"). A person is "not 'lawfully admitted' if he was not legally entitled to permanent resident status when he received it." *Daifullah*, 11 F.4th at 896 n.4.

a.  Requirements of the Statute

Under § 1182,

Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

8 U.S.C. § 1182(a)(6)(C)(i). The Court first considers whether a misrepresentation was made. *Id.* (saying an alien must "misrepresent[]" a material fact to be inadmissible under the statute's terms). "A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question." *United States v. Hirani*, 824 F.3d 741, 748 (8th Cir. 2016) (quoting *Shipley v. Ark. Blue Cross & Blue Shield*, 333 F.3d 898, 904 (8th Cir. 2003)). Second, that misrepresentation must have been made willfully. 8 U.S.C. § 1182(a)(6)(C)(i) (saying an alien must "willfully misrepresent[]" a material fact to be inadmissible under the statute's terms). "[A] misrepresentation or concealment is willful if it is deliberate and voluntary." *Hirani*, 824 F.3d at 747.

11

Third, the misrepresentation must have been material. 8 U.S.C. § 1182(a)(6)(C)(i) (saying the alien must "misrepresent[] a material fact" to be inadmissible under the statute's terms). Whether a fact is material is a legal question. *Kungys*, 485 U.S. at 772. "A concealment or misrepresentation is material if it has that natural tendency to influence" the decisionmaker. *See Daifullah*, 11 F.4th at 897 (internal quotation marks omitted) (citing *Kungys*, 485 U.S. at 772); *Witter v. Immigr. & Naturalization Serv.*, 113 F.3d 549, 554 (5th Cir. 1997) (applying *Kungys'* materiality standard to 8 U.S.C. § 1182(a)(6)(C)(i)); *Evelyn M. v. Swanson*, No. 23-cv-3478, 2024 WL 2728461, at *6 (D. Minn. May 28, 2024) (same). "When the truth 'would predictably have disclosed other facts relevant to [the applicant's] qualifications' for citizenship, the misrepresentation or concealment is material." *Daifullah*, 11 F.4th at 897 (citing *Kungys*, 485 U.S. at 772). The Eighth Circuit explained that a misrepresentation was material when, "[b]y not answering truthfully about [the applicant's] prior use of a false identity and false information to apply for asylum, [the applicant] foreclosed the line of inquiry, showing he was inadmissible under § 1182(a)(6)(C)(i) . . . ." *Daifullah*, 11 F.4th at 897. This "line of inquiry" reasoning has been applied by district courts within the Eighth Circuit, where it has been noted that "[a] misrepresentation is material under 8 U.S.C. § 1182(a)(6)(C)(i) when it 'tends to shut off a line of inquiry that is relevant to the alien's admissibility and that would predictably have disclosed other facts relevant to his eligibility for a visa, other documentation, or admission [to] the United States.'" *Evelyn M.*, 2024 WL 2728461, at *6 (citing *Matter of D-R-*, 27 I&N Dec. 105, 112–13 (B.I.A. 2017)).

Lastly, Defendants suggest that § 1182 contains a separate procurement element like § 1451, the civil denaturalization statute at issue in *Kungys*. Filing 16 at 15. However, the Court does not understand § 1182 to import § 1451's procurement standards even though § 1182 uses the word "procure." *See Evelyn M*, 2024 WL 2728461, at *6 (applying the three elements articulated above

but choosing not to apply a separate *Kungys*-esque procurement element); *Machoka*, 2022 WL 17834900, at \*7–8 (saying *Kungys* "applies in this case" but choosing not to import a separate *Kungys*-esque procurement element) (collecting cases).

Section 1451 provides for the denaturalization of those naturalized citizens whose "order[s] and certificate[s] of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). This requires courts to ask "whether [the applicant] 'procured his naturalization as a result' of his misrepresentations" for purposes of civil denaturalization. *Daifullah*, 11 F.4th at 898. In contrast, § 1182 states that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa . . . is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). The important difference here is that § 1182 uses the terms "seeks," "sought," and "has procured." *Id.* The terms "seeks" "sought" and "has procured" are most naturally construed as a series indicating that an alien is inadmissible if the alien made a willful and material misrepresentation at any point in an application's life cycle, whether the attempt was successful, unsuccessful, or abandoned. *See United States v. Berger*, 553 F.3d 1107, 1109 (8th Cir. 2009) ("Construing a statute, this court looks first to its plain meaning."); *Watson v. Ray*, 192 F.3d 1153, 1155 (8th Cir. 1999) ("When determining the meaning of a statute, our starting point must be the plain language of the statute."). The fact that the statute allows an alien to be deemed inadmissible when he or she merely seeks a visa means that the statute does not require the government to show that the alien "'procured his [visa] as a result' of his misrepresentations." This is different from the civil denaturalization context. *See Daifullah*, 11 F.4th at 898. Therefore, the Court does not import § 1451's "procurement" standards and understands § 1182 to require only that an alien willfully misrepresent a material fact in the course of seeking or procuring a visa to find that alien inadmissible. *See Evelyn M.*, 2024 WL 2728461, at

*6 (citing *Kungys* without applying a separate procurement element); *Machoka v. Bierman*, 2022 WL 17834900, at *7–8 (saying *Kungys* "applies in this case" but choosing not to apply a *Kungys*-esque procurement element) (collecting cases).

If an alien is inadmissible because he or she made a willful and material misrepresentation in the course of procuring a visa, that alien is not eligible for naturalization. 8 U.S.C. § 1429 ("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."); *Daifullah*, 11 F.4th at 896 n.4 (explaining one is not lawfully admitted for permanent residence "if he was not legally entitled to permanent resident status when he received it").

### b. The Government Met Each Statutory Requirement to Find Kueviakoe Inadmissible

The Court must first assess whether Kueviakoe made a misrepresentation. 8 U.S.C. § 1182(a)(6)(C)(i) (saying an alien must "misrepresent[]" a material fact to be inadmissible under the statute's terms). Kueviakoe pleaded that his daughter, Anais Mawusse Kueviakoe, was born on February 18, 2014. Filing 1 at 3 (¶ 9). However, on September 7, 2015, Kueviakoe "signed and submitted the required Form DS-260 Immigrant Visa Electronic Application in order to obtain a consular interview in Lome, Togo. On the Form DS-260, [Petitioner] indicated that he did not have any children." Filing 1 at 3 (¶ 11). Kueviakoe's failure to list his daughter despite her birth constituted an untrue statement of fact made in response to a directed inquiry. Filing 1 at 3 (¶ 11); *Shipley*, 333 F.3d at 904 ("A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question."). It is worth pointing out that Kueviakoe does not expressly dispute the existence of a misrepresentation. Filing 19 at 4. Instead, he argues that his misrepresentation is immaterial to his receipt of a diversity visa. Filing 19 at 4 ("Whether the

[Petitioner's] misrepresentation to immigration officials was a 'material' one is the issue at the heart of this case . . . .").

Petitioner's misrepresentation was also made willfully. 8 U.S.C. § 1182(a)(6)(C)(i) (saying an alien must "willfully misrepresent[]" a material fact to be inadmissible under the statute's terms). The decision rendered for Kueviakoe's N-336 hearing confirms such willfulness. *Zean v. Fairview Health Servs*, 858 F.3d 520, 526 (8th Cir. 2017) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, . . . and exhibits attached to the complaint whose authenticity is unquestioned.'"); Filing 1 at 5 (¶ 18) (quoting Filing 14-1 at 3). Kueviakoe indicated he did not have any children on his signed and submitted DS-260. Filing 1 at 3 (¶ 11). Kueviakoe's N-336 decision says Kueviakoe was listed as the declaring parent on the birth certificate he submitted as part of his naturalization application. Filing 14-1 at 2. Kueviakoe's knowledge and recognition of his daughter's birth means his failure to disclose his daughter on his DS-260 was deliberate and voluntary. *Hirani*, 824 F.3d at 747. Notably, Kueviakoe challenged a willfulness finding at the N-336 hearing but has not done so here, apparently conceding that the misrepresentation was willful, so that his challenge now is to the denial of naturalization on grounds of materiality. Filing 14-1 at 5; Filing 19 at 4 ("Whether the [Petitioner's] misrepresentation to immigration officials was a 'material' one is the issue at the heart of this case . . . ."); *see generally* Filing 1.

Petitioner's misrepresentation was likewise material on at least two grounds. First, Kueviakoe's failure to list his daughter "foreclosed [a] line of inquiry" relevant to his eligibility for the DV-1 because disclosure of Kueviakoe's daughter would have required the immigration officer to inquire further into whether the annual statutory cap would have made Kueviakoe ineligible to

receive a visa. *Evelyn M.*, 2024 WL 2728461, at *6 (quoting *Matter of D-R-*, 27 I&N Dec. at 112–13) ("A misrepresentation is material under 8 U.S.C. § 1182(a)(6)(C)(i) when it 'tends to shut off a line of inquiry that is relevant to the alien's admissibility and that would predictably have disclosed other facts relevant to his eligibility for a visa, other documentation, or admission.'"); *see Daifullah*, 11 F.4th at 897. Diversity visas are subject to an annual statutory cap. 8 U.S.C. § 1151(e) ("The worldwide level of diversity immigrants is equal to 55,000 for each fiscal year."). The statutory cap is impacted not only by the applicant but by the applicant's family members since immediate family members are entitled to the same right of admission as the qualifying lottery winner. 8 U.S.C. § 1153(d); *Ohene v. Zanotti*, No. 1:20-cv-869, 2022 WL 479771, at *7 (E.D. Va. Feb. 16, 2022). Additionally, "eligibility for a visa . . . ceases at the end of the fiscal year in question," and "[u]nder no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility." 22 C.F.R. § 42.33.

Together, the statutory cap and the temporal condition on eligibility mean that the omission of Kueviakoe's daughter "foreclosed [a] line of inquiry" relevant to Kueviakoe's eligibility. *Daifullah*, 11 F.4th at 897. Had Kueviakoe properly disclosed his daughter on the DS-260, USCIS would have had to inquire into whether she was "accompanying or following to join" him. 8 U.S.C. § 1153(d). If she was, USCIS would have had to determine whether she would have exceeded the statutory cap. *See* 8 U.S.C. § 1153(d). If the inquiry led to a finding that she was following him and she would exceed that cap, Kueviakoe himself also would not have been eligible for the visa that fiscal year and would have been unable to carry his application into the next. *See Ohene*, 2022 WL 479771, at *7 ("If, for example, at the time of Petitioner's application, there were two remaining visas available to issue for the fiscal year, and Petitioner disclosed his three children on his application, he would not be eligible for a visa for that fiscal year and would then be ineligible to

16

carry over his application for the following fiscal year."). The misrepresentation is not made immaterial simply because the inquiry could have been answered on the basis that his daughter was not following him. *Injeti v. U.S. Citizenship and Immigr. Servs.*, 737 F.3d 311, 316 (4th Cir. 2013) ("[F]inding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision."). The misrepresentation shut off the line of inquiry that would have otherwise been engaged, and that inquiry would have disclosed facts relating to Kueviakoe's position relative to the statutory cap, making the misrepresentation material.

Second, Kueviakoe's misrepresented parental status had a "tendency to influence [the immigration officer]" since the decisionmaker's public charge assessment was predicated on a flawed understanding of Kueviakoe's family and financial statuses. *See Daifullah*, 11 F.4th at 897. USCIS must assess whether applicants are likely to become public charges since applicants are inadmissible if they are likely to become public charges at "any time." 8 U.S.C. § 1182(a)(4)(A). Two of the factors USCIS must consider, by law, when evaluating an applicant's likelihood of becoming a public charge are the applicant's family status and financial status. 8 U.S.C. § 1182(a)(4)(B)(i)(III)–(IV). USCIS must also assess the applicant's likelihood of becoming a public charge by weighing all possible factors in totality. 9 FAM 502.6(f)(6) ("Although DV applicants are not required to submit the I-864, you must nevertheless apply a thorough 'totality of the circumstances' analysis for possible ineligibility on public charge grounds in all DV cases.").

"[T]he existence of [Petitioner's] [daughter] directly impact[s] his family status, assets, resources, and financial status for public charge purposes." *Machoka*, 2022 WL 17834900, at *8; *see Ohene*, 2022 WL 479771, at *6. It does not matter whether Petitioner had any intention of bringing his daughter to the United States. "[C]hildren impact public charge categories such as family status, assets, resources, and financial status, regardless of whether the children live in the

17

United States or abroad." *Machoka*, 2022 WL 17834900, at *10 (citing 8 U.S.C. § 1182(a)(4)(B)(i)(I)–(V)). Much like the petitioner in *Ohene*, Kueviakoe "failed to provide a fulsome picture of integral factors in the 'public charge' determination, [which] prevented the consular officer from making an accurate assessment of [Kueviakoe's] likelihood of becoming a 'public charge' while residing in the United States as a permanent resident." *Ohene*, 2022 WL 479771, at *8. Alternatively framed, Petitioner's misrepresentations foreclosed the line of inquiry relating to Kueviakoe's likelihood to become a public charge. *Evelyn M.*, 2024 WL 2728461, at *6 (quoting *Matter of D-R-*, 27 I&N Dec. at 112–13 (B.I.A. 2017) ("A misrepresentation is material under 8 U.S.C. § 1182(a)(6)(C)(i) when it 'tends to shut off a line of inquiry that is relevant to the alien's admissibility and that would predictably have disclosed other facts relevant to his eligibility for a visa, other documentation, or admission."); *see Daifullah*, 11 F.4th at 897.

Given the Court finds Petitioner's misrepresentation material on two separate bases, the Court does not reach Defendants' third argument for materiality.

"A claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson*, 33 F.4th at 499. Kueviakoe cannot plausibly allege that he is entitled to naturalization. An alien that willfully misrepresents a material fact in the course of seeking or procuring a visa is inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). Kueviakoe deliberately misrepresented his parental status. That misrepresentation was material as a matter of law because it foreclosed a line of inquiry concerning Kueviakoe's position relative to the annual cap on diversity visas. The misrepresentation was also material as a matter of law because the failure to disclose Kueviakoe's daughter influenced the immigration officer's public charge assessment and foreclosed the related lines of inquiry the officer would have had to pursue. Because Kueviakoe is inadmissible under § 1182, he is not eligible for

citizenship. 8 U.S.C. § 1429; *Daifullah*, 11 F.4th at 896 n.4 (explaining one is not lawfully admitted for permanent residence "if he was not legally entitled to permanent resident status when he received it"). Kueviakoe is without a legal path to recovery, and his Complaint must be dismissed.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED: Defendants' Motion to Dismiss, Filing 15, is granted.

Dated this 7th day of October, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge